**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **HARLAN L. FORTENBERRY and BRENDA J.** * | |
| **FORTENBERRY,** * | |
| * | |
| **Plaintiff,** * | |
| **v.** * | **CASE NO.:** _09-cv-77_ |
| * | |
| **BON SECOUR DEVELOPMENT, L.L.C.,** * | |
| **CARNEY REALTY, INC., SHIRLEE** * | |
| **POULOS, and THOMAS BEALLE &** * | |
| **ASSOCIATES, INC., and MORTGAGE** * | |
| **SOLUTIONS SOUTH, LLC,** * | |
| * | |
| **Defendants.** * | |

## COMPLAINT

Come now the Plaintiffs, Harlan L. "Larry" Fortenberry and Brenda J. Fortenberry (hereinafter "Plaintiffs" or "Fortenberry"), by and through undersigned counsel, and in support of their claims for relief against Defendants state as follows:

## I

## JURISDICTION & VENUE

1.     This action is brought pursuant to the provisions of  the *Interstate Land Sales Full Disclosure Act* ("ILSFDA"), 15 U.S.C. § 1701, et seq., the *Racketeer Influence and Corrupt Organizations Act* ("RICO"), 18 U.S.C. § 1961, et seq, state law claims under the *Alabama Uniform Condominium Act*, ("AUCA"), § 35-8A-101, et seq., common law claims for breach of fiduciary duties, fraudulent inducement, negligence, wantonness, and conspiracy.  Jurisdiction is conferred

upon this Court by 28 U.S.C. § 1331, with resulting supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. As complete diversity of citizenship exists among Plaintiffs and Defendants, and the requisite amount in controversy, this Court also has jurisdiction of the subject matter and parties pursuant to 28 U.S.C. § 1332, and to the extent necessary, based on ancillary and/or pendent jurisdiction.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as all Defendants reside in Alabama, a substantial part of the events or omissions which give rise to Plaintiffs' claims occurred in this district.

## II

## PARTIES

3.      Plaintiffs, LARRY FORTENBERRY and BRENDA J. FORTENBERRY, ("Plaintiffs" or "Fortenberry"), are married individuals over the age of nineteen (19) years and residents of the state of Mississippi.

4.      Defendant, BON SECOUR DEVELOPMENT, L.L.C. (hereinafter "Bon Secour") is an Alabama limited liability company with its principal place of business in Baldwin County, Alabama. Its registered agent is Steve H. Bryan, 16850 County Road 6 Ext., Gulf Shores, Alabama 36542. Defendant Bon Secour was the developer of Sunset Bay at Bon Secour ("Sunset Bay").

5.      Defendant, CARNEY REALTY, INC., (hereinafter "Carney") is an Alabama corporation with its principal place of business in Baldwin County, Alabama. Its registered agent is Shirlee J. Poulos, 500 West Beach Blvd., Gulf Shores, AL 36542. Carney was the exclusive real estate broker for Sunset Bay.

6.      Defendant, SHIRLEE POULOS, (hereinafter referred to as "Poulos"), is an

individual over the age of nineteen (19) years, with her principal place of residence as Baldwin County, Alabama. Poulos is a licensed real estate agent and is believed to be an employee, agent or shareholder in Carney. Poulos was the exclusive agent and/or broker for Sunset Bay.

7.      Defendant THOMAS BEALLE & ASSOCIATES, INC. ("TB") is an Alabama corporation. It is duly registered to transact business in Alabama. Its principal place of business is 572 Holcombe Avenue, Mobile, AL 36606. It's registered agent is Thomas Bealle at the same address.

8.      Defendant MORTGAGE SOLUTIONS SOUTH, LLC ("MSS") is an Alabama limited liability company. Its principal place of business is in Baldwin County, Alabama. Its registered agent is James Lynn Perry, 30421 HWY 181, Malbis Plantation Parkway, Daphne, AL 36526. TB was the appraiser and MSS was the mortgage company that Defendants Bon Secour, Carney, and Poulos instructed their customers to use.

## III

## FACTUAL ALLEGATIONS

9.      Larry and Brenda Fortenberry are adult residents of Jackson, Mississippi. They had never invested in preconstruction condominiums before being approached by a representative of Defendant Bon Secour Development, LLC in Mississippi.

10.     Defendants Bon Secour, Poulos, and Carney used the U.S. Mail system, internet, interstate telephone lines, electronic mail and other means to market and promote a residential and condominium development in Gulf Shores, Alabama, called Sunset Bay at Bon Secour ("Sunset Bay"). The development was located between Oyster Bay and Bon Secour Bay in Gulf Shores, Alabama. It would be compromised of 48 residential home lots, 40 initial condominium units, and

then another 50 condominium units. There would also be at least 75 boat slips. Thus, there were 138 units/lots marketed by Defendants Bon Secour, Poulos, and Carney.

11.     The initial 40 condominium units were built in two separate condominium structures called Sunset Bay at Bon Secour, Island Villas I and Island Villas II.

12.     In the summer of 2005, Defendants Poulos, Carney and Bon Secour approached the Plaintiffs about investing in a preconstruction condominium unit at Sunset Bay.

13.     Poulos, Bon Secour, Carney, and/or representatives of Bon Secour represented that there was a unit available at Sunset Bay, Unit 603 Island Villas I. They represented, via U.S. mail, interstate telephone, facsimile, electronic mail and other means, to the Plaintiffs that they would never have to close on the unit, that they were already lining up "end purchasers", that their investment would only increase, and that if they did not buy right now they would not be able to invest in the condominiums at preconstruction prices. Defendants represented to the Plaintiffs that they would simply have to sign paperwork for a "simultaneous closing" and that they would never have to actually close on the unit. Defendants made said representations of material fact knowing that they were false and with the intent to induce Plaintiffs to invest and purchase a preconstruction condominium unit.

14.     The Plaintiffs informed Carney and Poulos that they were looking to invest in the condominiums as an investment to make a profit. Carney, Poulos and Bon Secour represented to the Plaintiffs that they guaranteed they would make a profit on their investment, the only question was how much profit they would make. They also assured the Plaintiffs that they had the power to control the price of the units and they would not allow the prices to decrease at all. Poulos, Carney and Bon Secour told the Plaintiffs that investing in Bon Secour was the best investment decision they

could make, that people were already making money because the lots were increasing in value so quickly, and were still climbing. They even stated in writing, "your investment can only increase, and I am excited for everyone who took advantage of this opportunity." Carney, Poulos and Bon Secour further represented that they would never discount any lot or unit, that the prices would never be reduced under any circumstances. Again, stating in writing that they would never sell at "discounted prices."

15.     Plaintiffs made it clear to Poulos and to Bon Secour that they intended and were investors in Sunset Bay and did not intend to hold onto the property through construction, live in the property, or use the property as a vacation home. It was their desire to resell the unit they contracted to purchase to another purchaser.

16.     Carney and Poulos further represented to the Plaintiffs that they would represent the Plaintiffs as their agent, and make sure they made the most profit possible from their investment.

17.     Poulos and Carney were to act as Plaintiffs' realtor not only for the purchase of the preconstruction unit but also to assist in conveying and selling the unit to a subsequent investor or purchaser. Poulos advised the Plaintiffs to not resell right away, but hang on to the unit for awhile so that they would make more money.

18.     It was represented to the Plaintiffs by the Defendants that the condominium development at Sunset Bay was to be constructed in a style, manner and workmanship consistent with the rest of the Sunset Bay at Bon Secour development, being houses and structures in the immediate area and planned development related thereto, which was to be the same materials and design, general appearance and to be constructed in a reasonable appearance and quality thereof to make the units desirable for investors, subsequent purchasers, and as vacation homes and/or rental

investment properties.

19.     On or about August 22, 2005, based on the representations of material fact, the

Plaintiffs entered into a preconstruction purchase and escrow agreement for Unit 603 of Sunset Bay

Island Villas I with the Defendant Bon Secour in reliance on the representations made to Plaintiff

by Defendants Bon Secour, Poulos, and by and through their agents.  The total purchase price was

$739,900.00.  The agreement obligated the Plaintiff to pay a 20% earnest money deposit in the form

of an irrevocable bank letter of credit or, alternatively, a cash deposit. The Plaintiffs provided a letter

of credit in the amount of $147,980.00, representing 20% of the purchase price.

20.     Throughout 2005 and 2006 the Plaintiffs continued to communicate with Carney and

Poulos that they wanted to sale the unit and relied on her to find an investor or buyer for the unit.

Poulos and Carney advised not to sale right now because the prices were only going up, and that they

would make more money if they waited. Defendants Bon Secour, Carney, and Poulos represented

to Plaintiffs that their Unit had increased in value $50 per square foot. In reality, Carney, Poulos and

Bon Secour had not sold all the units at preconstruction, did not have any other buyers, and knew

the prices were not going up.

21.     Defendants Carney, Poulos and Bon Secour continued to make the misrepresentations

and suppress the true facts related to the failing development throughout this time.  In May and in

December 2006, Defendants Poulos, Carney and Bon Secour again represented to the Plaintiffs their

investment was safe, that the prices were only going up, that the Plaintiffs' expectations about their

investment would be met, and that the Plaintiff would also be able to take advantage of the GO Zone

Act as a rental property.  Defendants repeatedly and continuously represented that the price on the

Forteberry's Unit had increased, and that they could adjust the price up with their approval.

22.     In the fall of 2007, the Plaintiffs requested that they be allowed to change their Unit. Defendants induced them to enter into a separate preconstruction purchase and escrow agreement for Unit 805, Defendants represented that they were doing Plaintiffs "a favor" by allowing them to change. Defendants represented that they had to move someone out of Unit 805 to allow the Fortenberrys that Unit.

23.     Defendants Poulos, Bon Secour, Carney, and/or representatives of Bon Secour, again misrepresented that the Units had only gone up in value, that the Plaintiffs would never have to close on their unit, that they were already lining up "end purchasers," and that the Plaintiffs would simply have to sign paperwork for a "simultaneous closing" to take place.

24.     In reliance on the representations and suppressions of material fact, on or about October 16, 2007, the Plaintiffs and Defendant Bon Secour executed an agreement terminating the previous contract and stating that its terms would be "of no further force and effect." It further stated that the last of date of execution, being October 22, 2005, shall be deemed the Effective Date. Further, on October 16, 2007, in reasonable reliance on the representations and suppressions, the Plaintiffs and Bon Secour executed the separate Purchase and Escrow Agreement for Unit 805. The total purchase price for the smaller unit was $679,900.00. The agreement obligated the Plaintiffs to pay a 20% earnest money deposit in the form of an irrevocable bank letter of credit or, alternatively, a cash deposit. The Plaintiffs provided the previous letter of credit in the amount of $147,980.00 representing more than 20% of the purchase price.

25.     In or about November 2007, Defendants notified the Plaintiffs that it was time to close on their Unit 805. Defendants also represented that the Plaintiffs could take advantage of the GO Zone Act as long as they furnished their unit to make it "serviceable" as a rental unit, and they

was guaranteed to make a profit through resell, rental, and/or GO Zone.

26.     Defendants Poulos, Carney and Bon Secour instructed and guided the Plaintiffs to contact Mortgage Solutions South and Thomas Bealle Associates, Inc. ("TB") for appraisal and mortgage services. TB appraised Unit 805 at $700,000.00 in October, 2007, even though the 2005 contract price was $679,900.00. The fraudulent and wrongful appraisal allowed Carney and Poulos to earn a commission, Bon Secour made a profit, MSS to earn higher profits and fees, and the appraiser made a profit.

27.     The Plaintiffs were instructed that they would be able to take advantage of the GO Zone Act because they was going to rent out their unit, or at least have it "serviceable" for rental, until they sold it.

28.     The closing was scheduled for November 23, 2007. Defendants Carney, Poulos, and Bon Secour again misrepresented and assured Plaintiffs that the condominium units at Sunset Bay were in high demand and the values were increasing, and the Plaintiffs would resell their unit very soon as purchasers were lined up. The closing took place via U.S. Mail between Alabama and Mississippi. Based on Defendants' misrepresentations, suppressions, and wrongful conduct, the Plaintiffs executed an interest only first mortgage with MSS for $543,105.00, an interest only balloon payment second mortgage in the amount of $67,116.35, and wired a $83,017.76 cash payment to complete the transaction.

29.     After not hearing from Defendants about an end purchaser or receiving any information about the other closings, the Plaintiffs became concerned.

30.     The Plaintiffs then later learned that 32 of the 40 units had not been sold as represented, and Sunset Bay was not close to the investment as represented by Defendants. They

learned that the representations made to them were indeed all misrepresentations and suppressions

of material fact intended to induce them to invest and purchase the condominium unit. They learned

that Defendant Bon Secour would be conducting an auction for the 32 unsold units, the asking price

would begin at 50% of the listing price, which they paid just months earlier. The auction was

conducted on June 21, 2008, and failed miserably selling only one unit at the lowest possible 50%

price. Then on or about July 14, 2008, the Plaintiffs learned that the remaining units were to be

operated and managed as rental units with an agent on duty at Sunset Bay.

## COUNT ONE

## VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C. § 1861 - ALL DEFENDANTS

31.     Plaintiffs incorporate by reference all other paragraphs of this Complaint and

allege that all Defendants engaged in corrupt and illegal racketeering activity and, as set forth above,

over period of years in an organized effort to convert opportunities to their own benefit in a series

of numerous transactions entered into by Plaintiffs.

32.     The RICO violations directly injured Plaintiffs by causing them to pay a high and

inflated price, purchase, and service a condominium unit investment they otherwise would not have

but for Defendants' corrupt and illegal racketeering activities.

33.     All Defendants participated in the use of the United States Mail and interstate

telephone lines in furtherance of their actions as set forth above and all Defendants engaged in a

pattern of racketeering activity as defined in 18 U.S.C. §§ 1961-1968.

34.     From 2005 through present, all Defendants, all of whom are persons within the

meaning of RICO, were employed by, associated with, and profited from an enterprise whose

activities engaged in or affected interstate commerce and conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962; to wit, including but not limited to, multiple violations of 18 U.S.C. § 1341 and § 1343.

35.    The members of the group have the same or similar purposes, results, participants, victims, and methods of commission and are interrelated by distinguishing characteristics. These are not isolated events, but represent a pattern of practice.

36.    All Defendants violated 18 U.S.C. § 1341 multiple times, having devised or intended to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises as contained in the various correspondence, electronic mail communications, various loan documents, loan application, property appraisal, and HUD-1 Settlement Statement. For the purpose of executing such scheme or artifice or attempting to do so, all or some of the Defendants used the U.S. mail or private or commercial carriers in the furtherance of the scheme.

37.    All Defendants violated 18 U.S.C. § 1343 multiple times, having devised or intended to devise a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises transmitted or caused to be transmitted by means of wire, radio, or television communication in interstate commerce, any writings, signs, signal, pictures, or sounds, for the purpose of executing such scheme or artifice. All Defendants cither used interstate wire or reasonably would or should have foreseen the use of interstate wire to further the scheme.

38.    The multiple violations of 18 U.S.C. § 1341 and 1343, constitute racketeering

activity pursuant to 18 U.S.C. § 1961 and were an integral part of and essential to the success of the scheme.

39.     All Defendants knew the scheme could not have succeeded and/or continued without the mailing, providing, or causing the mailing, providing, or communicating of fraudulent information among various Defendants and Plaintiffs.

40.     The facts demonstrate that Defendants formed an association-in-fact.

41.     The associated persons formed an ongoing organization, formal or informal, concerning the RICO enterprise, and the various associates functioned as a continuing unit of the RICO enterprise, and the RICO enterprise existed separate and apart from the predicate activities themselves. The facts in the case demonstrate the existence of an association-in-fact RICO enterprise by showing that the enterprise has organizational structure or a chain of command, encompassing phases for victim recruitment, investment misrepresentations, fraudulent property appraisals, financing approval, and closing. Defendants used an organized effort to convert this and other opportunities in preconstruction condominium purchase contracts and investments to their own benefit and to the detriment of the victim.

42.     Plaintiffs were induced into executing the preconstruction condominium purchase agreements and closing on same by the fraudulent misrepresentations, omissions, and suppressions of Defendants. Those misrepresentations and omissions were reasonably calculated to deceive persons of ordinary prudence and comprehension. Once the Plaintiffs decided to invest in Bon Secour Island Villas by executing the preconstruction condominium contract, Defendants Poulos, Carney Realty, MSS, Thomas Bealle, and Bon Secour actively continued the misrepresentations and suppressions to secure the Plaintiffs' full purchase money.

43.     Defendants Bon Secour, Carney Realty, and Poulos guided Plaintiffs, as well as other customers, to Defendants TB and MSS. TB did not conduct a proper property appraisal and inflated property values with its appraisal. Once the Plaintiffs were induced to enter into the mortgage with Mortgage South Solutions, the appraisal was crucial in the scheme as it established the financing basis, which in turned determined the fees and profit margin for the enterprise participants.

44.     In the next step of the scheme, the Defendants directed the title company, Fairhope Title Services, Inc., to prepare a settlement statement and closing documents based on its fraudulent and false information. Defendant MSS used the interstate wire service to wire the loan proceeds to the title company. Defendants used the interstate telephone lines to transfer intentional and fraudulent closing documents on behalf of all Defendants and the enterprise.

44.     The fraud implicates all Defendants who received funds, oversaw the closing, and/or prepared the closing documents, including Poulos, Carney Realty, Bon Secour, TB, and MSS.

45.     All Defendants worked in concert to create a scheme in which all Defendants engaged in a pattern of false representations, some oral and some in writing, to induce the Plaintiffs and other customers into these same transactions.

46.     The actions of Defendants affected interstate commerce because Defendants are located in Alabama and Plaintiffs are located in Mississippi. Additionally, Defendant Bon Secour's principals reside in Mississippi. Furthermore, the use of telephone lines, electronic mail communications, facsimiles, mail, and the wiring of funds implicates the enterprise in its affect on interstate commerce.

**WHEREFORE**, premises considered, Plaintiffs demand judgment against Defendants in an amount in excess of the minimal jurisdictional limit of this Court for actual damages, treble damages

under 18 U.S.C. § 1964( c), cancellation of the agreement, rescission, return of all deposit monies and payments with interest, compensatory damages, punitive damages, costs, interest, and reasonable attorneys' fees, and such other relief deemed just by the Court.

## COUNT II

### VIOLATIONS OF 18 U.S.C. § 1962(d) - ALL DEFENDANTS

47.     Plaintiffs incorporate by reference all other paragraphs of this Complaint and alleges that all Defendants, in violation of 18 U.S.C. § 1962(d), conspired to violate 18 U.S.C. § 1962( c).

48.     As set forth above, the facts demonstrate the existence of an agreement among Defendants to engage in RICO violations.

49.     Each Defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of the enterprise through a pattern of racketeering activity.

50.     Each Defendant further agreed that someone would commit at least two predicate acts to accomplish these goals.

**WHEREFORE,** premises considered, Plaintiffs demand judgment against Defendants in an amount in excess of the minimal jurisdictional limit of this Court for actual damages, treble damages under 18 U.S.C. § 1964( c), cancellation of the agreement, rescission, return of all deposit monies and payments with interest, compensatory damages, punitive damages, costs, interest, and reasonable attorneys' fees, and such other relief deemed just by the Court.

## COUNT III

### VIOLATIONS OF INTERSTATE LAND SALES FULL DISCLOSURE ACT

## 15 U.S.C. § 1702(a)(2) - ALL DEFENDANTS

51.     Plaintiffs incorporate by reference all other paragraphs of this Complaint and allege that all Defendants, in violation of 15 U.S.C. § 1702(a)(2) employed device, scheme, and artifice to defraud Plaintiffs in connection with the sale of their unit.

52.     Defendants  violated 15 U.S.C. § 1703(a)(2) of the *Interstate Land Sales Full Disclosure Act* ("ISLFDA").  Defendants employed device, scheme, or artifice to defraud Plaintiffs. Defendants sought to obtain money and property from Plaintiffs by means of untrue statements of material fact, omissions of material fact, and/or misleading statements.  Said Defendants engaged transaction, practice, or course of business which operated or would operate as a fraud or deceit upon Plaintiffs.

53.     Defendants Carney, Poulos, and Bon Secour misrepresented the value of the units, the interest in the development, the number units actually sold, the profit available to Plaintiffs.  Said Defendants had an obligation to inform the Plaintiffs that the units were not sold and/or were not selling as represented.  Said Defendants also represented that they had the power and would ensure that the Plaintiffs' investment only went up in value.  Said Defendants represented that the Plaintiffs would not have to close on their unit because end purchasers were lined up.  Said Defendants misrepresented that their unit had increased in value when in fact they knew, or should have known, that it had not increased during the preconstruction process.

54.     Said Defendants also omitted this information from Plaintiffs, and intentionally, recklessly, and negligently concealed these facts during the preconstruction phase and at closing.

54.     Plaintiffs were unaware of these material facts, and were mislead to their detriment as a result of Defendants' misrepresentations, suppressions, and omissions of material fact.

Page 14 of 25

**WHEREFORE**, premises considered, Plaintiffs demand judgment against Defendants in an amount in excess of the minimal jurisdictional limit of this Court for actual damages, cancellation of the agreement, rescission, return of all deposit monies and payments with interest, compensatory damages, punitive damages, costs, interest, and reasonable attorneys' fees, and such other relief deemed just by the Court.

## COUNT IV

### VIOLATIONS OF ALABAMA UNIFORM CONDOMINIUM ACT § 35-8A-101, *et seq.* - DEFENDANTS POULOS, BON SECOUR, AND CARNEY REALTY

55.     Plaintiffs adopt and incorporate all allegations contained in the paragraphs of the Complaint as if fully set out herein.

56.     Defendants Bon Secour, Carney Realty, and Poulos are subject to the Alabama Uniform Condominium Act, § 35-8A-101, *et seq*, as they are a declarant or affiliates of declarant.

57.     Section 35-8A-413(a)(1) of the Code of Alabama provides as follows:

> (1)     ***Any affirmation of material fact*** or material promise ***which relates to the unit***, its use, or rights appurtenant thereto, improvements to the condominium that would directly benefit the unit, or the right to use or have the benefit of facilities not located in the condominium, ***creates an express warranty that the unit and related rights and uses will conform to the affirmation or promise***;

58.     Said Defendants misrepresented to Plaintiffs  the number units actually sold, the interest in and security of the investment in the condominium development, and the value of the units. Said Defendants had an obligation to inform the Plaintiffs that the units were not selling, increasing in value, or were sold as represented. Said Defendants also represented that they had the power and would ensure that the Plaintiffs' investment only went up in value. Said Defendants

represented that the Plaintiffs would not have to close on their unit because end purchasers were lined up. Said Defendants misrepresented to Plaintiffs that their unit had increased in value when in fact they knew, or should have known, that it had not increased during the preconstruction process. These statements created express warranties that would conform to these promises and assurances.

59.     Said Defendants failure to comply with the express warranties constitutes a breach thereof.

**WHEREFORE**, premises considered, Plaintiffs demand judgment against Defendants in an amount in excess of the minimal jurisdictional limit of this Court for actual damages, equitable relief, compensatory damages, costs, interest, and reasonable attorneys' fees, and such other relief deemed just by the Court.

## COUNT V

## BREACH OF FIDUCIARY DUTY AND RELATIONSHIP - CARNEY AND POULOS

60.     Plaintiffs reallege and incorporate all other paragraphs and allegations in this Complaint as if fully set out herein.

61.     An express and/or implied agency relationship existed between Plaintiffs and Defendants Carney and Poulos as Plaintiffs' agent. Therefore, said Defendants owed Plaintiffs a fiduciary duty to fully inform, communicate, warn, and disclose material facts concerning the condition of, the sale of, and any information that it knew of that would likely affect their purchase decision. Defendants Poulos and Carney also were under a duty to disclose the fact that the Defendant, Bon Secour, was reserving certain units and had not sold as many units as claimed.

Carney and Poulos were acting as the sales agent for Bon Secour and did so in breach of Defendants' fiduciary duty to Plaintiffs. Defendant Carney and Poulos had a fiduciary duty, as the sole and exclusive agent and representative of Plaintiffs, to be completely loyal and faithful to the Plaintiffs and to provide services in good faith.

62.     Defendants Carney and Poulos, as agents of Plaintiffs, owed fiduciary duties to Plaintiffs.

63.     An express and/or implied agency relationship existed between Plaintiffs and Defendant Carney and Poulos with regard to Carney and Poulos' performance of real estate services for, and on behalf of, the Plaintiffs. Defendants Carney and Poulos had special and specific knowledge of the fact that the Plaintiffs' investment goals could not be met due to the number of units not sold, intended to be withheld and marketed by the developer, and specifically misrepresented the quality of the investment in order to induce and cause the Plaintiffs to purchase their unit.

64.     Defendants Carney and Poulos breached their fiduciary duties owed to Plaintiffs including, but not limited to, to-wit:

> (a)     Carney and Poulos negligently, knowingly, willfully and/or wantonly breached their fiduciary duty to Plaintiffs by (1) misrepresenting the number of units sold and that were selling at the time; (2) misrepresenting the investment value of the purchase; (3) misrepresenting the level of interest in the development; (4) having knowledge of and failing to disclose Bon Secour's marketing and sale of other units at a lower price; (5) failing to relay to Plaintiffs the Defendant's lack of intent to sell Plaintiffs'unit or to

otherwise maintain it as an investment property; (6) failing to disclose their actions of withholding of units for sale to third parties, to whom Plaintiffs intended to market their unit; (7) misrepresenting and suppressing the true value of the unit; guiding the Plaintiffs through a fraudulent appraisal; and (8) directing and providing the Plaintiffs with a mortgage that they did not need and was based on false information.

(b)     Carney and Poulos negligently, knowingly, willfully and/or wantonly breached their fiduciary duty to Plaintiffs by failing to disclose the material facts set forth above with the intent to induce the Plaintiffs to purchase the Sunset Bay Island Villas unit and Plaintiffs, in reliance thereon, did, in fact, purchase said unit based on said Defendants' failure to disclose such material facts.

65.     As agents Defendants Carney and Poulos had a fiduciary duty to put the interests of the Plaintiffs, their principal, above their own.

66.     As a proximate result of the aforesaid said Defendants' breaches the Plaintiffs have been directly and proximately injured and damaged thereby.

**WHEREFORE,** premises considered, Plaintiffs demand judgment against Defendants Carney and Poulos for damages, both compensatory and punitive, plus interest from date of the first incident, and all costs of this these proceedings in an amount exceeding the jurisdictional minimum of this Court..

## COUNT VI

## FRAUD - ALL DEFENDANTS

67.     Plaintiffs reallege and incorporate all other paragraphs and allegations in this Complaint.

68.     Plaintiffs allege that Defendants are guilty of fraudulent misrepresentation, suppression and omission.  All Defendants made false representations and suppressions of existing and past material facts; such fraudulent misrepresentations and suppressions were made knowingly, without belief in their truth, or recklessly; and that the Plaintiffs reasonably relied upon them and suffered damages to their detriment as a result of such reasonable reliance.  Defendants Carney, Poulos, and Bon Secour  misrepresented the value of the units, the interest in the condominium development, and the price of the units.  Defendants had an obligation to inform the Plaintiffs that the units were not sold or selling as represented.  Said Defendants also represented that they had the power and would ensure that the Plaintiffs' investment only went up in value.  Said Defendants represented that the Plaintiffs would not have to close on their unit because end purchasers were lined up.  Said Defendants misrepresented that their unit had increased in value when in fact they knew, or should have known, that it had not increased during the preconstruction process.  These statements created express warranties that would conform to these promises and assurances.  TB and MSS made false representations via the fraudulent appraisal, loan documents, and in the settlement statements.

69.     The fraud of all Defendants is evident in the correspondence, electronic mails, appraisal documents, and loan documents.  Plaintiffs innocently and reasonably relied on the fraudulent statements and acts to their detriment.

70.     Defendants suppressed the material facts set forth above with the intent to induce the Plaintiffs to purchase the condominium unit made the basis of this lawsuit and Plaintiffs did, in fact,

purchase said condominium unit based on the Defendants' misrepresentations and suppressions of such material facts. The failure of the Defendants to inform the Plaintiffs of the facts concerning the pre-sale of other units, the true value of the units, the declining value of the units, and inferior materials and development plan, when Defendants knew that the Plaintiffs were purchasing the property merely for investment and for resale to end users and/or third parties, and the fact that the Defendants failed to disclose such facts to the Plaintiffs was a suppression of material facts, which the Defendants had a duty to communicate to the Plaintiffs. The Defendants' suppression constitutes legal fraud.

71.    Plaintiffs believed said suppressions and relied upon them in signing the Purchase Agreements for the Sunset Bay units. These Defendants made these suppressions in order to simply secure the sale of the units marketed and sold to the Plaintiffs at a premium price. This was a pattern and practice of these Defendants.

72.    Defendants misrepresented and suppressed these facts to the Plaintiffs for the purpose of fraudulently inducing Plaintiffs to sign the Purchase Agreements. Defendants ingaged in an intentional, reckless, and/or negligent fraudulent scheme together to inflate the value of the unit to induce Plaintiffs to close on the Unit to the detriment of the Plaintiffs. Defendants' fraudulently misrepresented and suppressed, in violation of the *Code of Alabama*, §§ 6-5-101, 6-5-102, 6-5-103, and 6-5-104, material facts.

73.    As a proximate result of the aforementioned wrongful and fraudulent conduct of Defendants, Plaintiffs have suffered damages as heretofore described.

74.    The representations made by the Defendants were false and these Defendants knew they were false; Defendants negligently, willfully, wantonly, intentionally and/or recklessly

misrepresented the facts; Defendants made promises and representations that were false and they knew they were false; or Defendants recklessly and without true knowledge thereof; and/or these Defendants misrepresented the facts by mistake, but did so with the intention that Plaintiffs should rely upon them.

75.     Defendants consciously and/or deliberately engaged in oppression, fraud, deceit, wantonness and/or malice with regard to Plaintiffs, and took advantage of their superior knowledge and agency relationship, which resulted in damage to and thereby depriving Plaintiffs of their legal rights and entitling Plaintiffs to punitive damages.

76.     Plaintiffs further avers that Defendants are guilty of conduct evincing a pattern and practice of intentional misconduct, or are guilty of conduct involving actual malice

        **WHEREFORE,** premises considered, Plaintiffs demand judgment against Defendants for damages, both compensatory and punitive, plus interest from date of the first incident, and all costs of this these proceedings in an amount exceeding the jurisdictional minimum of this Court.

## COUNT VII

### NEGLIGENCE AND WANTONNESS - ALL DEFENDANTS

77.     Plaintiffs reallege all other paragraphs and allegations contained in this Complaint.

78.     Plaintiffs avers that Defendants Poulos and Carney owed them a duty to exercise due and reasonable care in, and throughout the performance of real state services for Plaintiffs and on Plaintiffs' behalf.

79.     Plaintiffs aver that the Defendants Carney and Poulos breached said duty by failing to exercise due and reasonable care in and throughout the performance of real estate services for the

Plaintiffs, but failing to report, warn and disclose to Plaintiffs about the developer withholding units to market and sale in direct competition with the Plaintiffs' investment opportunity and further that Defendants Carney and Poulos failed to act within their fiduciary capacities as a representative of the Plaintiffs.

80.     Plaintiffs aver that Defendants' Carney and Poulos failure to fully inform the Plaintiffs constitute negligence, gross negligence and/or wantonness entitling Plaintiffs to recover punitive damages.

81.     Defendants Bon Secour, Poulos and Carney owed a duty and special duty to Plaintiffs due to their relationship as developer, seller, and agent. Defendants had a duty to disclose all material facts, costs, and changes that would affect Plaintiffs' decision to purchase, to not act in a negligent and wanton manner toward Plaintiffs, and to promptly return all required money to Plaintiffs. Defendant TB negligently and wantonly performed appraisal services. Defendant MSS negligently and wantonly failed to perform its mortgage services and due diligence in approving the Plaintiffs' loan. MSS negligently and wantonly failed to determine that the property value was correct and as represented, negligently and wantonly relied on a flawed appraisal, and negligently and wantonly failed in their duties at closing.

82.     Defendants negligently and wantonly misrepresented that the development at Sunset Bay was to be constructed in a style, manner and workmanship consistent with the rest of the Sunset Bay at Bon Secour development, being houses and structures in the immediate area and planned development related thereto, which was to be the same materials and design, general appearance and to be constructed in a reasonable appearance and quality thereof to make the units desirable for investors, subsequent purchasers, and as vacation homes and/or rental investment properties.

83.     As a proximate result of Defendants' negligence and wantonness Plaintiffs have suffered damage, and will suffer substantial financial harm, and has suffered and continues to suffer mental anguish and stress.

**WHEREFORE,** premises considered, Plaintiffs demand judgment against Defendants for damages, both compensatory and punitive, plus interest from the date of this incident in such sum as a jury shall reasonably assess, including interest and all costs of these proceedings, in an amount in excess of the jurisdictional minimum of this Court.

## COUNT VII

### CONSPIRACY - ALL DEFENDANTS

84.     Plaintiffs reallege all other paragraphs and allegations contained in this Complaint and allege that Defendants agreed by and between each other to engage in a scheme to obtain money from Plaintiffs and other consumers.

85.     All Defendants combined and acted in concert to obtain money form Plaintiffs and other consumers by engaging in a series of fraudulent misrepresentations, suppressions, omissions, and/or transactions.

86.     Defendants did the acts and things herein pursuant to, and in furtherance of, the conspiracy and the above alleged agreement.

87.     Defendants intended to accomplish this common purpose and knew of each other's intent to accomplish this common purpose.

88.     As a proximate result of the wrongful conspiracy, Plaintiffs have been damaged as previously set forth herein. Defendants did the acts herein alleged maliciously and to oppress Plaintiffs. Plaintiffs are therefore entitled to exemplary or punitive damages.

89.    Each Defendant conspired to unlawfully take and convert to his/her/its own use

certain property of Plaintiffs. Each conspirator is responsible for the acts of each of the other

conspirators.

90.    Not one of the Defendants has abandoned the conspiracy.

**WHEREFORE,** premises considered, Plaintiffs demand judgment against Defendants for

damages, both compensatory and punitive, plus interest from the date of this incident  in such sum

as a jury shall reasonably assess, including interest and all costs of these proceedings, in an amount

in excess of the jurisdictional minimum of this Court.

Respectfully Submitted,

/s/ Adam M. Milam
ADAM M. MILAM  (MILAA2597)
SHELLEY H. MILAM  (MILAS8958)
*Attorneys for Plaintiffs, Harlan L. Fortenberry and*
*Brenda J. Fortenberry*

**PLAINTIFFS DEMAND TRIAL BY STRUCK JURY IN THE ABOVE ENTITLED CASE.**

/s/ Adam M. Milam
ADAM M. MILAM

OF COUNSEL:

MILAM & MILAM, LLC
Post Office Box 1454
Fairhope, Alabama 36533
(251) 928-0191
(251) 928-0193 fax
amilam@milam-law.com

smilam@milam-law.com

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL,
RETURN RECEIPT REQUESTED AS FOLLOWS:**

Bon Secour Development, L.L.C.
c/o Registered Agent Steve H. Bryan
16850 County Road 6 Ext.
Gulf Shores, Alabama 36542

Carney Realty, Inc.
c/o Registered Agent Shirlee J. Poulos
16840 County Road 6 Ext.
Gulf Shores, Alabama 36542

Thomas Bealle Associates, Inc.
c/o Registered Agent Thomas Bealle
572 Holcombe Avenue
Mobile, AL 36606

Mortgage Solutions South, LLC
c/o Registered Agent James Lynn Perry
30421 HWY 181 Malbis Plantation Pkwy
Daphne, AL 36526

Shirlee Poulos
500 West Beach Blvd.
Gulf Shores, AL 36542